IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEFANIE LADOS,                          )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )    Civil Action No. 13-163J
                                         )
CAROLYN W. COLVIN,                       )
ACTING COMMISSIONER OF                   )
SOCIAL SECURITY,                         )
                                         )
          Defendant.                     )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2014, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 12) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for SSI on April 26, 2010, alleging a disability onset date of April 26, 2010, due to back problems and panic attacks. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on January 24, 2012, at which plaintiff, represented by counsel, appeared and testified. On March 22, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On July 15, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 47 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). Plaintiff has at least a high school education, and has past relevant work experience as a caregiver/home health aide, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ initially found that plaintiff suffers from the severe impairments of positive HLA-B27,[1] cervical spine degenerative disc disease, depressive disorder, generalized anxiety disorder and a panic disorder, non-agoraphobic. (R. 29). However, the ALJ determined that those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform light work with numerous restrictions to accommodate the limiting effects of her physical and mental

---

[1] HLA-B27 is a blood test to look for a protein that is found on the surface of white blood cells. A positive test means HLA-B27 is present and suggests a greater-than-average risk for developing or having certain autoimmune disorders. An abnormal result may be caused by ankylosing spondylitis, arthritis related to Crohn's disease or ulcerative colitis, psoriatic arthritis (arthritis associated with psoriasis), reactive arthritis or Reiter's syndrome, sacroiliitis (inflammation of the sacroiliac joint), or uveitis. http://www.nlm.nih.gov/medlineplus/ency/article/003551.htm

impairments.[2] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including fruit cutter, sorter of agricultural products, nut sorter and cuff folder. Relying on the vocational expert's testimony, the ALJ found that although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[3] for determining whether a claimant is under a disability. 20 C.F.R. §416.920;

---

[2] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform light work except she "is limited to occasional climbing, balancing, stooping, kneeling, crouching, crawling and bending. She must avoid climbing ladders, ropes and scaffolds. She must avoid unprotected heights and hazardous machinery. She cannot operate motor vehicles or moving machinery. She must avoid extreme temperatures. She is limited to simple, routine, low-stress work in a stable environment involving no deadlines or a fast-paced production. She must avoid interaction with the public. Supervisors and coworkers can be in the area where the claimant works, but she cannot have regular contact with them to perform essential job duties. Her work situations cannot involve more than two persons besides herself." (R. 32).

[3] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §416.920. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ erred at step 3 by finding that plaintiff does not have an impairment that meets or medically equals the criteria of any listed impairment; (2) the ALJ's residual functional capacity finding fails to account for all of plaintiff's limitations supported by the record; and, (3) the ALJ failed to develop the record. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ erred at step 3 by finding that plaintiff does not have an impairment, or combination of impairments, that meets or medically equals any of the listed impairments set forth in Appendix 1 of the Regulations. Specifically, she argues that the ALJ erred in finding that she does not meet the "C" criteria of Listing 12.06 for anxiety-related disorders. This argument is without merit.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the impairments listed in appendix 1 of the Regulations. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record and explain his findings at step 3,

including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. at 120, n.2. However, the burden is on the claimant to present medical findings that show that his impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, the ALJ identified Listing 12.06 as the relevant listing for plaintiff's anxiety disorder and adequately explained why plaintiff does not meet or equal that Listing.[4] Specifically, the ALJ found that plaintiff meets neither the "B" nor "C" criteria of that Listing.[5] (R. 31-32). Because Listing 12.06 provides that the "required level of severity ... is met [only] when *both* the A and B criteria are satisfied, *or* when the C criteria are met," (emphasis added), the ALJ appropriately concluded that plaintiff does not meet or equal either that listing.

Although plaintiff now argues that she meets the "C" criteria of Listing 12.06, she points to no specific objective medical evidence in the record that would support a finding that her anxiety disorder results "in a complete inability to function independently outside the area of one's home." Neither the consultative psychologist, Dr. Charles Kennedy, nor the state agency reviewing psychologist, Dr. Emanuel Schnepp, ever indicated that plaintiff meets the "C" criteria of Listing 12.06. To the contrary, Dr. Schnepp, specifically found that plaintiff does not meet that

---

[4] Plaintiff does not challenge the ALJ's step 3 finding to the extent he further found that plaintiff does not meet or equal any of the Listings for disorders of the musculoskeletal system nor Listing 12.04 for depression.

[5] The "B" criteria under Listing 12.06 require that the mental impairment result in *at least two* of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1 (emphasis added). Here, the ALJ found that plaintiff has mild limitations in activities of daily living; moderate limitations in both social functioning and concentration, persistence or pace; and, that there is no evidence of any episodes of decompensation. (R. 31). Plaintiff does not challenge the ALJ's finding that she does not meet the "B" criteria.

criteria,[6] (R. 448), and both he and Dr. Kennedy concluded that plaintiff has only moderate difficulties in social functioning. (R. 448; 429).

The only evidence that plaintiff offers supporting her assertion that she has a "complete inability to function independently outside the area of one's home" is her own testimony that she needed her son to go with her everywhere.[7] However, Step 3 concerns the medical severity of a claimant's impairment and each listing "specif[ies] the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §416.925(c)(3). Accordingly, it was plaintiff's burden to present medical findings equal in severity to the relevant listed impairment. *See* Sullivan v. Zebley, 493 U.S. 521, 531 (1990). She did not do so. Moreover, while Dr. Kennedy indicated in his report that plaintiff "relies on her son a great deal" and that he used to drive her from "client to client" at her past job, it was not because she cannot function at all outside the home but rather because "she is frightened of driving." (R. 423). The court is satisfied that the ALJ's step 3 finding is in accordance with the applicable regulations and that it is supported by substantial evidence.

Plaintiff's second argument is that the ALJ's residual functional capacity finding fails to take into account all of plaintiff's mental health symptoms. In particular, plaintiff contends that the ALJ did not include limitations accounting for plaintiff's complete inability to be around people at all or limitations accounting sufficiently for her difficulties in concentration, persistence and pace. The ALJ's residual functional capacity finding also is supported by substantial evidence.

---

[6] State agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(e)(2)(ii); SSR 96-6p.

[7] For example, plaintiff testified that her son drove her to her prior employment and would run the errands for her, (R. 53), that she was fired from her previous job when her employer would not let her son sit in on a meeting with her, (R. 55), and that she needs him for support and she needs someone around her all the time, including at her doctor's appointments. (R. 59-61).

At step 5, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §416.920(g). Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §416.945(a); SSR 96-8p.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform light work with a number of restrictions accommodating the limitations arising from plaintiff's physical and mental impairments. (R. 32). Although plaintiff disputes this finding as it relates to limitations arising from her mental impairments, it is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence. (R. 36). In fact, it appears the ALJ went to great lengths to give plaintiff the benefit of every conceivable doubt by incorporating limitations that perhaps were beyond even those suggested by the medical sources. The ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision.

Plaintiff's contention that the ALJ should have included an additional restriction to account not only for plaintiff's inability to interact with others but also for her alleged inability even to be around them simply is not supported by any evidence in the record. As already noted, Dr. Kennedy and Dr. Schnepp both concluded that plaintiff is only moderately limited in social functioning and neither even remotely suggested that plaintiff cannot be around people at all. Dr. Kennedy reported that when she was asked to come into his office, she did so "without incident"

and he observed that she was "well-mannered and displayed fair self-sufficiency." (R. 423). Although Dr. Schnepp recognized that plaintiff experiences "social anxiety and discomfort around strangers" he also reported that she is "able to maintain socially appropriate behavior" and that she is "self-sufficient." (R. 435).

In addition, the ALJ noted in his decision that plaintiff "had no difficulty interacting with her representative or others in the hearing room and displayed no inappropriate social behavior throughout the course of the hearing." (R. 31). Finally, plaintiff herself testified that she sometimes goes out to eat with her family "if it's a little booth away from everybody" (R. 60) and also reported that she attends church (R. 242; 75). Thus, while it is clear that plaintiff may not be comfortable around people, there is no evidence that she has a complete inability even to be around other people. The ALJ's residual functional capacity finding limiting plaintiff to jobs where she can avoid interaction with the public, may have coworkers or supervisors in the area but must have no regular contact with them, and limiting her to work situations not involving more than two persons besides herself, more than adequately accounts for all the limitations supported by the record.

To the extent plaintiff argues that the ALJ should have given more credence to plaintiff's testimony because "all of the psychiatric evidence indicates that she has a diagnosis of panic attacks", it is well settled that disability is not determined merely by the presence of an impairment, but by the effect that impairment has upon the individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, the court is satisfied that the ALJ properly evaluated plaintiff's allegations regarding her limitations in accordance with the

AO 72
(Rev. 8/82)

regulations. 20 C.F.R. §416.929(c); see also SSR 96-7p.[8] In assessing plaintiff's credibility, the record shows that the ALJ did not ignore plaintiff's subjective complaints but appropriately considered those complaints in light of the medical evidence, plaintiff's treatment history, her activities of daily living and all of the other evidence of record. (R. 32-34). Based upon all of the evidence, the ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms to be not entirely credible. (R. 33). The court finds no error in the ALJ's evaluation of plaintiff's subjective complaints.

It also is important to emphasize that the ALJ did not find plaintiff's subjective complaints entirely not credible. Rather, the decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from her impairments are supported by the medical and other evidence, the ALJ accommodated those limitations in the residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible. The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and is satisfied that it is.

Finally, to the extent that plaintiff contends that the ALJ failed to account for plaintiff's moderate difficulties in concentration, persistence and pace, that contention is belied by the record. The ALJ's residual functional capacity finding expressly limits plaintiff to "simple, routine, low stress work in a stable environment involving no deadlines or fast-paced production." (R. 32). Case law in this circuit makes clear that such a restriction is sufficient to accommodate moderate

---

[8] Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §416.929(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); see also SSR 96-7p.

limitations in concentration, persistence and pace. *See, e.g.*, Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work adequate to account for moderate limitations in concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

Plaintiff's final argument is that a remand is necessary in this case so that the ALJ may consider additional records submitted for the first time to the Appeals Council. These records include treatment notes from Altoona Family Practice dated February 6, 2009, to May 23, 2012 (R. 469-83); treatment notes from Altoona Hospital dated August 31, 2010, to September 2, 2011 (R. 484-531); and MRI results from Blair Medical Associates dated February 24, 2012 (R. 532-535). Plaintiff's argument is without merit.

Generally, when a claimant proffers evidence in the district court that previously was not presented to the ALJ, the district court's determination of whether to remand to the Commissioner is governed by Sentence 6 of §405(g) of the Act. *See* Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Sentence 6 permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." See also Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984). "[A] claimant must satisfy all three requirements of Sentence 6 (new, material and good cause) in order to justify a remand." Matthews at 594; Szubak at 833.

Here, plaintiff concedes that she cannot meet the Mathews test for a sentence 6 remand. However, she argues that she nevertheless is entitled to a remand for consideration of this evidence by the ALJ because the ALJ's failure to secure these records prior to his decision constituted a violation of his duty to fully develop the record.

It is true that Social Security proceedings are inquisitorial, not adversarial and, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103 (2000). Moreover, while it has long been established in this circuit that the ALJ has a heightened duty to develop the record and to hold full and fair hearings when a claimant is unrepresented, Livingston v. Califano, 614 F.2d 342 (3d Cir. 1980); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979), the ALJ's obligation to develop the record applies equally where a claimant is represented. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005).

Here, the court is satisfied that the ALJ fulfilled his duty to develop the record. Due to the dearth of medical evidence regarding plaintiff's mental impairments, the ALJ ordered a consultative examination with Dr. Kennedy. He also held a full and fair hearing at which plaintiff, represented by counsel,[9] was able to testify and make her case for disability. At that hearing, the ALJ specifically inquired of both plaintiff and her counsel whether there was any additional evidence that was not in the record, and, upon being informed that plaintiff had an appointment for the MRI before Dr. Li, he agreed to keep the record open for thirty days after being advised by counsel that plaintiff "may or may not have an additional submission." The ALJ further instructed counsel that if more time was needed to let him know, and he specifically advised plaintiff that "if

---

[9] The court notes that plaintiff was represented during the proceedings below by Attorney John C. Peters, not Attorney Axinn who is representing her on this appeal.

anything changes in your condition or your treatment or you have any other appointments, you let [counsel] know." (R. 45).

The court is satisfied that the ALJ took all reasonable steps to ensure that the record was developed fully in this case and that plaintiff received a full and fair hearing. Accordingly, no remand is warranted in this case for consideration of evidence that should have been provided to the ALJ by plaintiff or her representative below. *See* 20 C.F.R. §912(a) ("you must bring to our attention everything that shows that you are ... disabled"); 20 C.F.R. §912(c) ("[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is"); 20 C.F.R. §912(d)("[w]e will make every reasonable effort *to help you* get your medical reports from your own medical sources *when* you give us permission to request the reports.")

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*[signature]*
Gustave Diamond
United States District Judge

cc: David M. Axinn, Esq.
106 Hollidaysburg Plaza
Duncansville, PA 16635

Stephanie L. Haines
Assistant U.S. Attorney
200 Penn Traffic Building
319 Washington Street
Room 224, Penn Traffic Building
Johnstown, PA 15901